Good morning, Your Honor. It's Maris Fultons for Dr. Sung. In the courtroom this morning with me is Dr. Sung, and what I would like to do, we've been given, I understand, ten minutes, and I would like to reserve half of that time for rebuttal. You have a clock in front of you. Pardon me? You have a clock in front of you. Okay, thank you, Your Honor. The way I'd like to proceed, Your Honor, is because of the shortness of time, I have prepared a demonstrative exhibit. If I could use that and hand it up to the court. Have you shown it to opposing counsel? I will right now, Your Honor. They're all documents that are in existence. Do you hear my question? Have you shown it? Not yet. Well, then no. Okay. You have to clear it with opposing counsel. I don't know what's in it. Okay, let me get this. The demonstrative exhibit I was going to use, and it's in the record, and I'll refer to the pages as I go along. This is something that's in the record? Yes, it is, Your Honor. Okay, then you can use it. I don't know what you're talking about. Okay, I was just going to hand it to you because I thought it would be easier to look at the documents. I have two points that I want to make. The first point is that the court below, Your Honors, said that we had, after the first pretrial conference, that we had submitted in trying to reform the exhibits, that we had submitted 30 new documents. And I have an example of the one document that I wanted to review with you and to show you that. Where is it in the record? It is ER 1535. Okay. And if it would be more convenient, I could use my demonstrative exhibit, Your Honor. No. Okay. Just tell us where it is. 1535, did you say? 1535. Okay, we'll find it. And then I would also, that was the first exhibit, number 24. And then I'm going to be talking also, and I had them in the demonstrative exhibit. I had them one beside each other. But the other document that I'll be talking about is ER 1536. 1535 and 36, okay. Okay. I'm getting there. 33, 34, 35. Okay, this is 35 and 36, okay? Yes, Your Honor. I think we're all looking at. Okay. The point I would like to make is that ER 1535 is the first exhibit that we marked, and it's marked plain as exhibit number 24. It was brought to our attention, the court said, well, wait a minute. You can't introduce this. There's some problems with this document because, as you can see in my copy I highlighted, but right in the middle of the third paragraph down it says, we're trying to right now raise 300 million. And you see that million is circled, and then there in the fourth paragraph down there are underlinings. There are underscores. Now, just, here's the point I'm trying to make. If you turn the page to ER 1536, this is also exhibit 24A. This is exactly the same language. It is different only in that it is reformatted. We call it computer friendly. I was told that. But it has a caption on top of it, who it was sent to. It has a date and et cetera. The substance, however, of this document is exactly the same. And, of course, this, if you look at it, compare the two, it doesn't have the underlying, nor does it have the circles. The point is this, that these two documents are exactly and precisely the same. There is not anything new in this document. No, no, no. They're not precisely the same. One of them has handwriting on it, an underlining, and the other one has addresses that shows it may have been mailed somewhere, and lacks the underlining there. Really quite different. It is different, Your Honors. You said the same. Well, they're the same. I said, no, they're different. Now you're saying they're different. So what point are you trying to make here? To me, they're the same because they Well, you're wrong. To you, it doesn't matter. The point is they are quite different, and the differences might be significant in litigation. The other point I want to make on this document is this. These are not documents that were never disclosed because these are documents that were given to us by the defendants, and not to us necessarily, but to Dr. Sung. When this started out, every exhibit that we tried to use in our case, every single one was a document that Dr. Sung had received from one of the defendants. This is not documents that were undisclosed. Because your time is short, let me ask you a question. Let me cut some of this short. I'm trying to figure out where you're going with this. This is the so-called reform document or the motion to reform, and you ended up getting sanctioned $18,000 in change for this. Yes, sir. With respect to the overall case, that's chicken feed because what happened in the end was that your case was dismissed as a sanction, and not for these reform documents, but rather because of the documents that were discovered on Dr. Sung's computer. So why are we talking about this when the only thing you can get is a reduction to the $18,000 or maybe elimination of that, but we really have, I think, a more serious question. It was dismissed as a sanction. I understand, but I wanted to make the point on the $18,000. All I'm saying is these are documents that were not, as the court below indicated, that had not been disclosed. They had been disclosed because they were the defendant's documents. Who put the handwriting on the other page? This is Dr. Sung's. He would testify at the time. So those were in the possession? Of Dr. Sung. So they didn't have that. They didn't produce that. They did not. Okay. So you withheld a document that he had received and annotated. No, sir. That document was produced to the defendants from the very beginning, even before the claim was made. Okay. The judge is complaining about 24A, not 24. The marginalia was put on there by Dr. Sung. We gave those to the defendants from the very beginning, even before the claim was filed. Okay. You're down to three minutes. Okay. I understand. Judge Fletcher pointed you. Yes. Let me switch over now. In my demonstrative, let me call your attention to some other documents. You're not going to follow what Judge Fletcher suggested. I'm sorry? You're not going to follow what Judge Fletcher suggested. The big problem you have is a dismissal. Is a dismissal. Okay. And you have just spent seven and a half, over seven minutes, over ten minutes talking about the $18,000. Okay. Let me switch over to the other point that I want to make. Yeah. And I would refer to anywhere in the record, but particularly, I'll give you three, ER-123, and you don't have to look at them right now because we're not going to have time, obviously, ER-134, and then beginning ER-562. These are documents that they said they searched the computer, and not only the computer, the hard drive, but they also searched the website for email transmissions. And they're saying that these are documents, the court said, these are documents that should have been produced. Where I think error was made by the court below is very simply this. She never indicated that this document would have made any difference to the case. She had a blanket statement. She said that, well, maybe these documents could have, and I want to get her statement right. Let me say it. Basically, her point was that these documents, and I don't remember specific documents, but collectively there were enough documents in there that showed your client to be a sophisticated investor, and therefore the question of whether he would be relying on misrepresentations would be reasonable. Isn't that what she ultimately said? That's correct, Your Honor. Okay, and that's the big point. So are you saying there's nothing on his computer that would have been relevant to making that argument? I'm not saying it's not relevant because I don't think relevancy really is. She would have produced everything. At the end of the day, what I'm saying is I think that the court below should have made a decision saying look at one specific document. This would have made a difference. That was never done, and we didn't even know about those documents. They were obtained from the e-mail records that Dr. Stone was not aware of. It's like I myself get e-mails. I might get 100 e-mails. I go through those very quickly. I look for the ones that are significant overnight. I either delete or ignore the other ones. Excuse me. When you say not aware of, well, some of these documents were research that Dr. Sung himself had conducted into this industry. It was communications he'd had. Of course he was aware of those things. In a very small way, and I think we addressed each one of those. What I'm saying, the error below was there was not one any specific document where Dr. Sung had an opportunity to say, well, I may have received that. I don't remember it. It's something that's in the background that there probably wasn't any knowledge on the part of Dr. Sung. Certainly there was no, here's the bottom line. There was no reason for us to withhold these documents because I, as counsel for Dr. Sung, sincerely believe they make absolutely no difference in the whole scheme of things. I know that that's not the question. That's not the standard. You know that. I understand that. But there's no reason for Dr. Sung to have withheld these documents or for us. And I think to dismiss the case, it has to be willful. Why did he withhold them? We didn't know about them, Your Honor. I mean, if we'd known about them, fine. They were on his computer? I had no trouble finding them within the issue. Dr. Sung's computer is an old computer. In the forensic expert, he said, these are very difficult to find in his e-mail and his records because there's documents printed one after another. He was not aware of those things coming in. I was going to refer, there's 100 pages for medical capital. Medical capital was an investment that had been identified to them. They questioned him at depositions, et cetera, et cetera. He received over 100 e-mails on that. And he would receive it but ignore it in the sense that he knew it was coming from a receiver. He didn't learn anything. It meant nothing to him. These e-mails and this information is not something that was willfully withheld by Dr. Sung or by counsel. We had no reason to. It made no difference to our case. And I understand that's not the standard. But it's true. The true story is I think before you say, okay, you can't bring your case, you're out of court, then there has to be some kind of finding that there was a true willful violation of the order of the court. I don't think we have that here, Your Honors. Thank you very much. Thank you. Let me go over a little bit. Good morning, Your Honors. May it please the Court. Michelle Agnew-Benny on behalf of FDIC as receiver for the Bank of Whitman. I'll be using a portion of the appellee's time, but I'm going to save a few minutes for Mr. Davis, hopefully. Dr. Sung, I think I'll just focus on the dismissal aspect of this case, unless the Court had any questions about the monetary sanctions. Is there anything you heard today that you think is not adequately addressed in your brief? No, I think that our briefs fully outline our arguments. Can I ask a question? When counsel made a point, finally, in closing, that they were not willfully withheld, that they had no reason to withhold them, he gave a theory as to why Mr. Sung and counsel didn't even know they were there, and ultimately, no harm, no foul. So what's in a brief statement? Do you have any response to that? There was no smoking gun in these documents. Well, I think that the documents taken together are very helpful for the defense's case because taken as a whole, a lot of these documents that were discovered in this forensic examination of Dr. Sung's computer show other investments, some risky investments, research he did on the energy sector, other investment advisory relationships, and all of these things taken together really call into question whether Dr. Sung relied on Mr. McKay's advice in making these investments, and that's a crucial element of all of his claims against both the FDIC and Mr. McKay. Was he ever deposed and asked about other investments? Yes, he was, and he did not disclose many of the investments that we later discovered, including his Charles Schwab account and some others, and that was one of the things that the district court noted at the hearing that really showed his willfulness, in fact, was evidence of his bad faith, the fact that he wasn't truthful in his deposition. Willfulness under this court standard is shown by Sung's failure to comply with the scheduling order and discovery request, even though the documents were in his possession the entire time. It's not necessary that he just, you know, makes no search and doesn't know about them. He has some sort of duty to look beyond the first desk drawer, as the district court said. If he is true, as counsel suggested, that if he looked on his computer and checked his files, this would have been very difficult to find, and they were basically things that he didn't bother to read. They were just, I guess, spam emails. Not spam, but, you know, just traffic that he didn't feel was relevant. Is there evidence to back that up? I don't think there's any evidence in the record to show that these were very, very difficult to find. I'm not sure of that, but the fact that when Dr. Sung went back to his computer to find, or went back to his files and computer to find the reformed exhibits, the fact that he was able to locate them relatively quickly tends to show that these were not that hard to find. He was able to go back and find emails, including that Exhibit 24A that Mr. Baldins referred to. Also, the assertion that these were mostly just spam emails that he never bothered to read, that's just not true. There are documents that he sent to Aaron Burns, one of his investment advisors. I mean, this is correspondence that he had. He participated in this that were never disclosed. And I can refer you to ER-773, also ER-798, where he said that Aaron Burns has been his advisor for 10 years, and he heavily depends on him. The Charles Schwab emails, ER-843 to ER-846, there are just a number of things. Those are just some examples that I can name off the top of my head. So I think his assertion that this wasn't willful, this wasn't bad faith, he just didn't know, it's just not supported by the record. And Dr. Sung, he never provided an excuse in his briefs until now. He hasn't really provided an excuse for not producing these documents. He just wants the court to accept his word that he was acting in good faith. And, you know, one of the things he points to is the fact that he agreed to the examination of his computer. But that only happened once it was discovered that he hadn't disclosed a bunch of documents. You've answered my question. Okay. You know, I see that I'm running out of time. I want to leave Mr. Davis with a few minutes. So unless there are any other questions for the FDIC. Okay, thank you. May it please the court, Mark Davis on behalf of William and Cynthia McKay. I'm happy to answer any questions that the court has. If not, I'll focus on the issue of dismissal as well. And there's a few points I'd like to make. I think the primary issue that we've repeated, both at the district court level and in the briefing to this court, is the pattern of abuse by Dr. Sung in this case. And it has really tainted the entire proceeding going back from the state level when we were doing discovery, not having this information despite having asked for it in the federal court discovery period. Again, where we were specifically deposing him, asking him for this information. And instead of answering questions truthfully, he refers to discovery responses that have now been proven to be inaccurate and incomplete. And the import of that is as the defendants are preparing their defense to the case, they're relying on this information. And they don't have the whole truth. They don't have the whole story. And they're not able to prepare their case. Who to depose, who to subpoena, what questions to ask. The entire proceeding has been irreparably tainted as a result of this. And that was recognized by the district court that a number of times she had to sanction Dr. Sung. She had to exclude a witness because he couldn't follow the deadline to disclose his witness. She had to exclude exhibits because he couldn't meet the deadlines. And then ultimately we find out that there's new evidence, there's documents we don't have. That leads to the monetary sanction and really prompts the defendants to now have legitimate concerns that there's other materials. And ultimately those concerns were warranted. And we find out, I believe two weeks before trial, that we have thousands of documents, hundreds of which are arguably relevant to the case, that we don't have. So the McKays are now in a position where we're feverishly preparing for trial and now we have this dump of documents that we have to figure out what to do with. And that entire proceeding, that entire history, is prejudice to the McKays. They're paying additional attorney's fees not only to our firm, but now they're paying a forensic expert to go obtain documents that Sung should have produced. And I went back and I looked at the hearing transcript from August 23rd of 2013 and plaintiff's counsel specifically argued that sophistication isn't relevant. He said it a couple of times. And it's just not true as a matter of law. The Steiner case specifically says that the first factor when considering reasonable reliance is the sophistication of the investor. So again, these documents are relevant. He isn't the arbiter of relevance and should have produced them. And as my colleague mentioned, there's no excuse. There's no excuse. And to say that I just didn't see them or I didn't know about them, we know that to be false as well. Because again, he's communicating with his financial advisors. He's even discussing Mr. McKay in those emails. To what extent when a client is represented by counsel and a discovery request comes in for documents, particularly in this electronic age, what is the responsibility of counsel in himself examining the computer or having an image or having an analysis of a search done by an expert? I don't know what the practice is out there. Sure. Is it a responsibility on counsel's part to analyze the computer, not to take the client's words for it? I think so. I think and I don't know that you have to go hire a forensic expert early on in discovery to do that. But you do have to establish a system where you're diligently making sure that your client is making all efforts to give you materials that they have. And I think it's clear that never happened in this case. The fact that after the pretrial conference, they have plaintiff and attorneys have a meeting to review this computer, review these emails, and they don't produce all these other materials, I don't understand how that could have happened. So there's clearly some kind of problem on their end. And I think there's case law that says not only do you have a duty to preserve evidence, but you have to establish that system so that both sides have equal access to all the evidence, to all the facts, and all the materials. So that in and of itself is a problem. And to touch on the issue of willfulness, really the standard is, is this something that's out of your control? And there's no evidence that any of this was outside of Dr. Sung's control or his counsel's control. It was sitting there on his computer during the entire pendency of the case. And I think there's a couple of really nuanced problems there. One, which is through the forensic search, we learned that facts were being pushed out of the laptop. As the overdrive continued to get full and it was completely full by the time we did the search, older files were being deleted. So we don't even know what evidence might have been there that is now gone. And so to that point, that's a big concern in addition to, I think, the more standard concern, that it's been seven or eight years now. So witnesses' memories are gone or fading. Witnesses may not be available. Thank you. I've got one question that's a bit off to one side. Obviously, there were a number of people who invested in this enterprise. And are there other lawsuits still pending against your client? Against my client? Not that I'm aware of, no. Okay. Thanks, Your Honor. Okay. Thank you. The case is salient and submitted. We are adjourned.
judges: Kozinski, Fletcher, Fisher